# Peabody Building and Loan Association *versus* Houseman.

A. applied to a building association for a loan, and offered as security therefor mortgages on certain properties which he owned. B., the solicitor of the association, on the representation of A., that he could obtain the searches more quickly from the recorder of deeds, allowed A. to procure the searches. A. induced the clerk of the recorder to issue the searches, omitting one mortgage on each of the properties, assuring the clerk that these mortgages should be satisfied. A sale took place on the omitted mortgages and the association lost its money. *Held,* that the recorder was liable for the loss. *Held, further,* that A. was in no sense the agent of the association so as to affect it with his knowledge of the encumbrances. *Held, further,* that the authority given to A. by the solicitor was not within the scope of his powers, and would not bind the association.

February 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county :* Of January Term 1877, No. 132.

Case by " The George Peabody Building and Loan Association," against John A. Houseman. The following facts, together with those stated in the opinion of this court, sufficiently illustrate the case. Houseman was recorder of deeds for the county of Philadelphia. Charles M. S. Leslie, a conveyancer, desiring to procure a loan of money from the plaintiff, offered as security therefor mortgages on certain described properties which he owned. The solicitor of the plaintiff, Mr. Stevenson, permitted Leslie to get the searches against the properties in question, Leslie having represented to him that he could procure the searches more readily from the recorder. Three searches were made, and from each of them was omitted a mortgage which was on record against the property. The plaintiff then advanced the money to Leslie. Under the omitted mortgages the premises were sold and the money loaned by plaintiff was wholly lost. Leslie, at the time of these transactions and theretofore, was a conveyancer of good standing in the community.

A clerk in the recorder's office testified : " I was the search clerk under defendant ; I knew Leslie ; I issued these searches ; I knew these encumbrances were not on the search ; I told Leslie to be sure and have them satisfied ; he said he would ; I did not certify the mortgages on record to Alexander Smith, because Mr. Leslie requested me not to, and told me it was all right ; that he intended to pay them and have them satisfied out of the money he was to receive from the association."

Mr. Tait, who was a clerk in Leslie's office, was offered on the part of the defendant to prove " that witness did the writing on the

searches at request of Leslie, and being aware of the encumbrances not on the search, called Leslie's attention to the same, and that he replied he meant to pay them out of the money he was about to borrow."

This evidence, under objection, was admitted.

The same witness, upon cross-examination, also testified : " I knew Mr. Stevenson; I knew he was making the loans to Leslie ; I did not mention to him these omitted encumbrances."

The defendant submitted the following points, all of which the court, Briggs, J., affirmed :

4. If the jury believe that during Leslie's employment by the plaintiff to procure the searches, he (Leslie) was informed that the premises in question were then subject to mortgages, whose liens were prior to that of the mortgage of the plaintiff at that time under negotiation, then such information having been acquired in the transaction in which Leslie was employed, it affected the plaintiff with notice thereof, and their verdict should be for the defendant.

5. If the jury believe that Leslie's attention was called to the fact of the omission of the search to disclose the prior mortgages, and Leslie said he knew of the existence of the prior liens, but intended to satisfy them, and that such conversation took place while Leslie was employed by the plaintiff in said transaction, then the plaintiff was affected, in due time, with notice of the prior mortgages, and the verdict of the jury should be for the defendant.

6. If the jury believe the defendant's testimony in connection with the searches, the notice to Leslie of the lien of the prior mortgages must have been given to him during his (Leslie's) employment by the plaintiff in the said transaction, and such notice affected the plaintiff, and their verdict should be for the defendant.

In the general charge, the court, inter alia, said :

" I instruct you, if Mr. Stevenson, the solicitor of the association, employed or permitted Leslie to procure the searches, he thereby made Leslie his agent.    And if Leslie's previous knowledge with reference to these encumbrances was brought home to him in the transaction, or if he had notice in this transaction that these encumbrances were on the properties, such was constructive and legal notice to the association."

The verdict was for the defendant.

Plaintiff took this writ, and assigned for error the admission of the evidence excepted to, the affirmance of the foregoing points, and the portions of the charge noted.

*James H. Stevenson* and *David W. Sellers*, for plaintiff in error. —The plaintiff's conveyancer used the borrower, not to make a search under the official seal of the recorder, but to go and procure it.    The court below thought the agency of a messenger was an agency for all purposes; and if an agent to get a search received

knowledge, it was in law the same as though the recorder had put it on the official search. The doctrines on which this case should have been decided were authoritatively declared in Houseman v. Building Association, 31 P. F. Smith 256.

Leslie's knowledge of prior liens could not possibly be grafted on an agency merely to order searches and not to make them: Keenan v. Insurance Co., 12 Iowa 132; Winchester v. Valetta, 4 Md. 231; Insurance Co. v. Shriver et al., 4 Md. Ch. 388; Bank v. Davis, 2 Hill 463.

*A. Sydney Biddle, I. Newton Brown* and *G. W. Biddle*, for defendant in error.—Stevenson delegated to Leslie whatever authority he himself possessed as agent to order and obtain searches, and his right to do so is not questioned. He substituted another agent for himself in all matters relating to the obtaining from the recorder information as to the encumbrances. It cannot be seriously argued that to receive notice of an encumbrance is not within the sphere of duty of one himself a solicitor, who as such and in his own name directs searches. He cannot deny the scope of the agency by declaring that he intended that all the facts required should be on paper. One solicitor employed another solicitor for the purpose in question, and the scope of the agency is determined, not by the intention, but by the mode by which the authority was delegated. The agency is not defined by the intention of the principal, or even by the private instructions given to the agent, but by the authority with which the agent appears to be clothed, when dealing with the other party: Hovey v. Blanchard, 13 N. H. 145.

Mr. Justice PAXSON delivered the opinion of the court, March 24th 1879.

In 1872, Charles M. S. Leslie, a conveyancer of good standing in the city of Philadelphia, applied to the plaintiffs for the loan of some money, to be secured by mortgages upon his real estate. The application was favorably considered; the necessary papers were prepared, and mortgage searches obtained from the recorder of deeds. From each of the three searches thus obtained, a mortgage was omitted; the mortgaged premises were sold under the omitted mortgages, and the money loaned by the plaintiffs was wholly lost. This suit was brought against the recorder of deeds to recover the loss.

Upon the trial in the court below, it appeared that the searches were ordered by Mr. Leslie, with the consent of the plaintiffs' solicitor, James H. Stevenson, Esq. In his testimony, Mr. Stevenson tells how this occurred. He says: "I drew the mortgage for $1600 referred to in this record; Mr. Leslie got this search with my permission; after producing it, and seeing that my mortgage was properly recorded, I paid him the money. Mr. Leslie said he

was in a hurry to get his money, and that with my permission he would prepare an order for the search; he did, and I compared it with the description in the mortgage, and the date occurring in the title. He then, with my request, obtained the certificate from the recorder; he said he could obtain it more quickly than I could. I agreed to let him do it, and I paid him the money on the recorder's certificate."

It also appeared that the omitted mortgages were purposely left off the searches by the clerk, and that this was done at the request of Mr. Leslie, and upon his assurance that the said mortgages would be paid. Mr. Myers, the search clerk, said in his examination in chief: "I knew Leslie; I issued these searches; I knew these encumbrances were not on the search; I told Leslie to be sure and have them satisfied; he said he would; I did not certify the mortgages on record to Alexander Smith, because Mr. Leslie requested me not to, and told me it was all right, that he intended to pay them and have them satisfied out of the money he was to receive from the association."

Out of the foregoing condition of facts the learned counsel for the defendant constructed the somewhat ingenious defence, 1. That Leslie was the agent of the plaintiffs to procure the search; and 2. That having notice or knowledge of the omitted mortgages during the course of his procurement of the searches, his knowledge was the knowledge of the plaintiffs, and they could not recover. This view of the case was substantially sustained by the court below, and forms the subject of the second and third specifications of error.

In Houseman *v.* The Girard Mutual Building and Loan Association, 31 P. F. Smith 256, the question whether Leslie was the agent of the building association, or merely the servant or clerk of the conveyancer, was left undecided. It was not essential to the decision of that case for the reason that granted the agency, there was no proof that the agent acquired his knowledge of the omitted searches in the transaction in which he was employed. "There was not only no evidence of this," said Justice SHARSWOOD, "but it was plain that it had been gained before, and in an entirely different transaction." In the case in hand it is equally clear that Leslie's knowledge of the omitted encumbrances was not acquired in the course of the particular transaction. It is, however, attempted to take the case out of the ruling in Houseman *v.* The Building Association, *supra,* for the reason that Mr. Leslie's attention was called to the omitted mortgages whilst procuring the searches.

We do not think it important to discuss the question how far Leslie's knowledge would have affected the plaintiffs, had he been their agent. It would be carrying the doctrine of agency beyond any recognised limits, were we to hold that Leslie was the agent of the plaintiffs for any purpose. The most that can be said, is that

[Peabody Building & Loaan Assoc. v. Houseman.]

Mr. Stevenson, the plaintiff's solicitor, permitted him to procure the searches, in order that he (Leslie) might the sooner obtain the money.  If an agent at all, he was the agent of Stevenson, and for the mere purpose of procuring a search, neither Stevenson nor Leslie had anything to do with making the searches.  Stevenson was employed as plaintiff's conveyancer, for the purpose of preparing the papers and ordering the necessary searches.  It is not pretended that Stevenson had any authority from the company to employ any one under him.  It needs no authority to show that an agent employed for a special purpose, cannot, without express authority, employ one or more agents under him, so as to bind his principal.

The defendant's search clerk knew when he issued the searches that the plaintiffs were about to loan money upon the faith of them.  He omitted the mortgages in question, upon Leslie's assurance that he would "have them satisfied out of the money he was to receive from the association."  The recorder has no right to throw the disastrous results of the misplaced confidence of his clerk upon those who loaned their money upon the faith of his official certificate.

The judgment is reversed, and *venire facias de novo* awarded.