AMERICAN PIPE AND CONSTRUCTION COMPANY, Respondent, v. THE STATE OF NEW YORK, Appellant.

Contract — canals — State — contract for construction of Barge canal — claim for extra work and materials furnished — term " excavation " includes removal of piling and masonry where necessary in performance of work — bulkhead erected to confine materials during construction of embankment but necessarily left in place to prevent embankment from sloughing off into canal — contractor entitled to pay therefor under provision in contract for payment of unit price for " sheeting and bracing "— engineer s order not necessary — not a cofferdam within meaning of specifications — contractor not entitled to payment for material obtained outside prism where contract called for building embankment with material excavated therein — provision that excavation will be paid for only once — contractor not entitled to payment for re-excavating material deposited on banks and using same for bridge approaches.

1. Under a written contract for construction of a portion of the Barge canal, by the terms of which the contractor agreed to construct the canal prism and as incidental thereto to make approximately a certain number of yards of excavation at a stated price, the nature of the material to be excavated not being specified but the word " excavation " being defined in the specifications as " the loosening, loading, transportation and depositing of all material, * * * of every name and nature necessary to be removed," a subcontractor is not entitled to recover for extra work in removing sheet piling, formerly erected by the State within the limits of the Barge canal prism for the purpose of holding in place the banks of the old Erie canal, which had become covered with dirt and silt so as not to be visible when the contract was executed. In removing the piling the subcontractor merely performed the contract duty to make excavation for the canal prism and was entitled to no more than the contract price for excavation.

2. Nor may any recovery be had for alleged extra work in removing masonry, a portion of an old lock, which became necessary in prosecution of the work. This too was excavation within the terms of the contract.

3. Where the contractor was required to erect an embankment between the canal and a ditch and for the purpose of confining the

material so that the bank of the canal would retain its line, a subcontractor constructed a "bulkhead or cofferdam" of boards supported by posts set in the ground and held in place by struts, wires and banking and filling, which after erection could not be removed for the reason that the soft material in the embankment would otherwise slough off into the canal, the contractor, in agreeing to create the embankment, necessarily agreed to use the sheeting and bracing required to maintain it and is entitled to payment therefor in accordance with a provision in the contract for payment of a unit price for " sheeting and bracing."

4. A contention that claimant may not recover for this item because the engineer never " o.dered in writing " the sheeting and bracing, cannot be sustained. The contract itself, in view of the physical character of the material, of necessity required the erection of sheeting and bracing to confine it. It was not a doubtful case where an engineer's order should have been sought.

5. Nor does the contract provision that " there shall be no payment for sheeting and bracing used in the maintenance and construction of cofferdams " apply. The sheeting and bracing erected to confine the embankment were of a permanent, not a temporary character and were not a cofferdam within the meaning of the specifications.

6. Where the contract called for the erection of an embankment from material to be excavated from the canal prism, and it is not found that the contractor could not obtain sufficient material therein, payment may not be recovered, at the excavation price, for material procured without the lines of the prism.

7. By a provision in the specifications that " excavation will be paid for only once. All cost of rehandling material must be included in the contract price for the original excavation," claimant is debarred from being paid for the re-excavation and rehandling of material excavated from the prism of the canal, and deposited in embankments, from which, after it had dried, the material was re-excavated and deposited to form bridge approaches. The contract did not provide that the material for bridge approaches be taken from the canal prism and claimant having been paid for its original excavation cannot further recover.

*American Pipe & Construction Co.* v. *State,* 221 App. Div. 785, modified.

(Argued December 9, 1927; decided January 10, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department,

entered June 28, 1927, reversing, so far as appealed from, a judgment entered upon an award of the Court of Claims and increasing the award.

*Albert Ottinger, Attorney-General (Frederick D. Colson* of counsel), for appellant. Claimant was not entitled to payment for removal of sheet piling and timber construction in the prism of the canal. (*Degnon Contracting Co.* v. *City of New York,* 235 N. Y. 487; *Jackson* v. *State of New York,* 210 App. Div. 115; 241 N. Y. 563; *Kinser Construction Co.* v. *State of New York,* 204 N. Y. 381; *Ferguson Contracting Co.* v. *State of New York,* 237 N. Y. 186; *Daly* v. *Busk Tunnel Railway Co.,* 129 Fed. Rep. 513; *Wyckoff* v. *Woarms,* 118 App. Div. 699; *Woodruff* v. *Rochester & Pittsburgh R. R. Co.,* 108 N. Y. 39; *Langley* v. *Rouss,* 185 N. Y. 201; *Molloy* v. *Village of Briarcliff Manor,* 145 App. Div. 483; *Kelly* v. *St. Michael's Roman Cath. Church,* 148 App. Div. 767; *Traitel Marble Co.* v. *Brown Bros., Inc.,* 159 App. Div. 485.) Claimant was not entitled to payment for lumber used in building the so-called bulkhead or cofferdam. (*Cameron-Hawn Realty Co.* v. *City of Albany,* 207 N. Y. 377; *Lewman* v. *U. S.,* 41 U. S. Ct. Cls. Rep. 470; *Dermott* v. *Jones,* 2 Wall. 7; *Stees* v. *Leonard,* 20 Minn. 494; *School Trustees of Trenton* v. *Bennett,* 27 N. J. L. 513; *Tompkins* v. *Dudley,* 25 N. Y. 272; *Belmar Contracting Co.* v. *State of New York,* 233 N. Y. 189.)

*Frederick W. Newton* and *John C. Wait* for respondent.

KELLOGG, J. The Bellew and Merritt Co. and the State of New York entered into a written contract, known as Barge Canal Contract No. 49. The former thereby agreed to construct, in accordance with plans and specifications annexed, a section of the Barge canal in Wayne county having a length of about six miles. The latter agreed to pay, for the work and materials furnished, the unit prices specified in an agreed schedule. The Bellew and Merritt Co. sublet a large part of the work

to a subcontractor, which in turn sublet a part of the work undertaken by it.   Subsequently the corporate name of the Bellew and Merritt Co. was changed by order of court to the "Merritt Construction Company."   The Merritt Construction Company thereafter assigned Barge Canal Contract No. 49, with the consent of the State, to the claimant, the American Pipe and Construction Co. The contract work was carried to completion by the two subcontractors and the claimant, and was accepted by the State.   Thereafter the claimant filed this claim for additional compensation, asserting that it had performed work and furnished materials for which it had not been paid, and that it was entitled to payment therefor.   The claim set forth a large number of items, but, owing to a stipulation entered into between the parties, we need consider here none other than the items 47, 42, 43, 40 and 39, as the same were numbered in "Schedule A" attached to the claim.   The Court of Claims, after a trial, made findings in reference to these items, determining all issues of fact in favor of the claimant.   As to items 47, 42, 40 and 39, it dismissed the claim on the ground that the services performed or materials furnished were performed or furnished by subcontractors and not by claimant, and that the latter had suffered no damage. As to item 43, it found that the claimant furnished materials and labor of the value of $1,055.32 and made an award in its favor for that amount.   As to materials and labor constituting the balance of the item, it dismissed the claim on the ground that they were furnished by the subcontractors and not by the claimant.   The claim, as to all other items, was dismissed.   Judgment was directed in favor of the claimant for $1,055.32.   The claimant took an appeal, stipulating that it would bring up for review the decision of the Court of Claims in respect to the five numbered items only, and that it would rest upon the findings of fact made by the Court of Claims in reference to such items.   Accordingly, the

record upon appeal was made up to contain the decision of the Court of Claims, the findings proposed by the claimant and the State, with the court's rulings thereupon, the original contract between the Bellew and Merritt Co. and the State, the plans and specifications, and other proof of a purely documentary character. No testimony given upon the trial was incorporated in the record. The State did not appeal. Upon the record so made the Appellate Division reversed the judgment below and directed judgment for the claimant upon each of the five items. The State appealed from the decision thus made and upon the facts found by the Court of Claims, considered in the light of the documentary proof set forth in the record, asks for a reversal. We will deal separately with the five disputed items.

Item 47. The essential facts found were these: That part of the Barge canal prism which the claimant's assignor agreed to construct incorporated within its boundaries, for a certain distance, a portion of the old Erie canal. In the improvement of that canal the State had used, at various points, timbers and sheet piling to hold the banks in place. This construction consisted of driven piles, timbers extending to cover the spaces between the piles, and sheet piling covering the timber work. The structure had become covered with dirt and silt and was not visible when contract No. 49 was executed. The claimant's assignor was not aware of the presence of the piling when it signed the contract. The State, having erected the piling, was chargeable with knowledge of its presence within the limits of the Barge canal prism. No reference was made to the piling in contract No. 49 or the plans and specifications annexed thereto. Its removal was not specifically called for thereby. However, the claimant does not assert, and the Court of Claims has not found, that the State made any misrepresentation of fact in regard to the presence of the piling. The sheet piling construction was removed by one of the subcon-

tractors in the course of its work of excavation. The piling removed extended through a distance of 1,658 feet, and the fair and reasonable value of removing the same was $3,863.14.

The essential thing which the Bellew and Merritt Co., under contract No. 49, promised to construct was a canal prism of a certain width and depth as shown upon plans annexed to the contract. To this end it necessarily agreed to remove all material within the lines of the prism of whatever name or kind. It particularly promised to make approximately 1,543,600 cubic yards of " excavation " for twenty-three cents per cubic yard. The nature of the material to be excavated was not specified. " Excavation " was the thing agreed to be made. The word is defined by the contract specifications as follows: " Excavation shall consist of the loosening, loading, transporting and depositing of *all material,* whether wet or dry, of every name and nature necessary to be removed, for the purpose of forming the canal prism, ditches, pits for structures, for obtaining material from borrow pits, or for any other purpose necessary to complete the works under contract   *   *   *." In removing the piling construction, therefore, the subcontractor merely performed the contract duty of the Bellew and Merritt Co. to make excavation for the canal prism. The contractor was entitled to receive therefor the sum of twenty-three cents per cubic yard and no more. It has been paid that sum. Therefore, the claimant, under item 47, may have no recovery.

Item 42. The facts found are these: The contract called for the construction in the new channel of the Barge canal of a lock known as lock 30. The old channel of the Erie canal was to the south of the new channel. A portion thereof was to be utilized as a ditch for the purpose of passing water around lock 30, as in time of flood. In this portion of the old canal was lock 61 of the old Erie canal. To construct the by-passing ditch it

became necessary to remove about ten cubic yards of masonry from lock 61. This was done by one of the subcontractors. The reasonable value of such work was $204.

As in the case of item 47, the work performed was work of excavation, within the terms of the contract, for which the contractor was to receive twenty-three cents per cubic yard. The specifications, in the clause heretofore quoted, define excavation to include " material of every name and nature necessary to be removed " whether for the purpose of forming " the canal prism " or necessary " ditches." Moreover, they seem otherwise particularly to provide for the condition here found, for they specify that " stones in existing structures removed by the contractor shall remain the property of the State " and payment for transporting, piling and storing such material shall " be included in the contract price for *excavation.*" No recovery upon this item may be had.

Item 43. The facts found are these: The Barge canal, between certain stations, was to be paralleled on the north by a channel known as the State ditch. The contractor was required to erect an embankment between the canal and the ditch which would sustain a head of water. The material to be excavated from the canal and the ditch was muck, loam, marl and clay, not suitable for the construction of levees. The character of the material, in conjunction with the narrowness of the space between the canal and ditch lines, made it impossible to construct an embankment which would remain within the lines, unless bulkheads or other structures were erected to confine it. For the purpose of confining the material so that the north bank of the Barge canal would retain its contract line, one of the subcontractors constructed " a bulkhead or coffer-dam " consisting of lines of boards supported by posts set in the ground and held in place by struts, wires, and banking and filling. After this structure had been erected it

was found that it could not be removed for the reason that the soft material in the embankment would otherwise slough off into the canal. Two hundred and eighteen thousand one hundred feet, board measure, of lumber was used in erecting the structure. The fair value thereof was $6,331.90. Lumber of the value of $1,055.31 was furnished by the claimant. The balance was furnished by the subcontractor.

The specifications in terms provided: " When ordered in writing by the Engineer, the sheeting and bracing necessary for the proper preservation of any excavation, embankment, or structure, shall be placed by the contractor; and will be paid for at the contract price for sheeting and bracing; excepting there shall be no payment for sheeting and bracing used in the construction and maintenance of coffer-dams." The contract provided for the payment of a unit price for " sheeting and bracing " of fifty dollars per thousand feet board measure. We take this provision to mean that whenever the contract required the contractor to place sheeting and bracing, the State was required to pay therefor the sum of fifty dollars per thousand feet. Did this contract require the contractor to place sheeting and bracing? The contractor agreed to erect an embankment between the Barge canal and the State ditch, using therefor the spoil excavated from the two channels. But such was the fluid nature of the spoil that it would not remain in position to constitute an embankment unless artificially confined. The Court of Claims has found that the erection of the bulkhead set up was absolutely necessary to a permanent embankment. Therefore, the contractor, in agreeing to create the embankment with spoil, necessarily agreed to use the sheeting and bracing required to maintain it.

It is said that the claimant may not recover for this item because the engineer never " ordered in writing " the sheeting and bracing. The answer is that the contract itself, in view of the physical character of the

material, of necessity required the erection of sheeting and bracing to confine it. It was not a doubtful case where an engineer's order should have been sought. It was a case where the contractor *must*, to comply with its contract, have used the bracing. As it must have used it, so must it be paid for having used it in compliance with its contract.

It is also said that the provision that " there shall be no payment for sheeting and bracing used in the construction and maintenance of coffer-dams " applies since the Court of Claims itself has termed the erection a " bulkhead or coffer-dam." The essential characteristic of a coffer-dam is that it temporarily excludes water from the site of work to be done. A coffer-dam is "A temporary enclosing dam built in the water and pumped dry: to protect workmen while some work, as the foundation of a pier, is in progress." (New Standard Dictionary.) The sheeting and bracing erected in this instance were of a permanent, not a temporary, character. They may have served the purpose of construction. They now serve permanently to maintain the banks of the Barge canal. They are in no true sense a coffer-dam. They clearly are not such within the meaning of the specifications.

The claimant should have a recovery for this item.

Item 40. The facts found are these: The contract called for the erection of an embankment on the south side of the Barge canal, between stations 7,423 and 7,432, to sustain a head of water. This embankment was required to be erected from material to be excavated from the canal prism and was to constitute a " Spoil Bank." Between the two stations there was not sufficient material within the lines of the canal prism to form the embankment when excavated. Accordingly one of the subcontractors procured 5,000 cubic yards of material from without the lines of the prism. It is for this material at the excavation price of twenty-three cents per cubic yard

that the claimant has sought recovery. It was not found that the contractor could not have secured sufficient spoil within the prism. It was merely found that to secure the spoil it must have gone to points in the prism 2,000 feet distant from the stations.

The claimant's assignor, when it signed the contract, should have known that the canal prism between the stations did not contain sufficient material to erect the adjacent spoil bank required. It nevertheless contracted to erect the bank with prism material. Having elected to obtain material outside the prism, in defiance of the contract, its assignee should receive no compensation in addition to that which it would have received had it done the work in accordance with the contract. All prism excavation having been fully paid for, the claimant should have no further recovery under this item.

Item 39. The facts found are these: The contractor was required to erect three highway bridges over the Barge canal, together with necessary approaches thereto. One of the subcontractors erected the bridges. In constructing the approaches thereto it deposited in embankments 28,499 cubic yards of dirt and other material. This dirt had originally been excavated from the prism of the canal. It was not deposited in the embankments as it came from the prism. The material was of such a nature that it was unsuitable for the approaches until it had been dried out. Accordingly it was placed in permanent spoil banks and permitted to dry out during an extended period of time. Thereafter the material was re-excavated from the spoil banks and deposited to form the bridge approaches. The original excavation was paid for at twenty-three cents per cubic yard. The claimant seeks to recover an additional twenty-three cents per cubic yard for the re-excavation of the material from the spoil banks.

The contract did not provide that the material for bridge approaches be taken from the canal prism.

Neither did it provide that it should be excavated from borrow pits established beyond the lines of the prism. The claimant did not request the engineer to establish such borrow pits. It chose for use in the approaches the material excavated from the canal prism. The specifications provided: "Excavation will be paid for only once. All cost of rehandling material must be included in the contract price for the original excavation." The provision is not ambiguous; it is explicit and conclusive. By it the claimant is debarred from being paid for the re-excavation and rehandling of the same material. Recovery for this item may not be had.

The judgment should be modified to reduce the claimant's recovery to the sum of $6,331.90, with interest from the date of filing the claim, and, as modified, affirmed, without costs.

CARDOZO, Ch. J., POUND, LEHMAN and O'BRIEN, JJ., concur; CRANE, J., dissents as to the modification in respect of items 39 and 40; ANDREWS, J., dissents and votes to affirm.

Judgment accordingly.