[Civil No. 3352. Filed March 5, 1934.]

[29 Pac. (2d) 1065.]

PHOENIX TITLE & TRUST COMPANY, a Corporation, Appellant, v. CONTINENTAL OIL COMPANY, a Corporation, Appellee.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Messrs. Cunningham, Carson & Gibbons and Messrs. Frazier & Perry, for Appellee.

LOCKWOOD, J.—Continental Oil Company, a corporation, hereinafter called plaintiff, brought suit against Phoenix Title & Trust Company, a corporation, hereinafter called defendant, to recover damages for the alleged negligence of defendant in preparing a certain abstract of title to property which was purchased by plaintiff from N. B. Cooper and Nell B. Cooper, his wife, in reliance upon said abstract. The case was tried to a jury, which returned a verdict in favor of plaintiff in the sum of $15,199.86, with interest, and judgment was duly rendered thereon, and after the usual motion for new trial had been denied, this appeal was taken.

There are some twelve assignments of error, which we shall consider as appears advisable. The ultimate facts necessary for a determination of the case, taking the evidence as strongly as is reasonably possible in support of plaintiff's theory of the case as we must do under the verdict of the jury, are as follows: In the early part of June, 1929, the Coopers were the owners of lot 9 in block 4 of the East Evergreen addition to the city of Phoenix, which lot is situated at the northwest corner of the intersection of Seventh and Roosevelt Streets. They listed his property for sale with the Dwight B. Heard Investment Company, hereinafter called the investment company by which it was sold to one E. G. Roell, under an option agreement dated June 10, 1929. This option was for the sum of $17,500, and contained the following clauses:

"The parties of the first part agree, within ten days from the date hereof, to furnish and deliver to

the party of the second part an abstract of title continued and certified to date, showing fee simple title, free and clear of liens, encumbrances, and objections affecting marketability, to said property vested in the parties of the first part, except (here state encumbrances if any):

"Unpaid paving taxes in the amount of $438.00 (Four hundred thirty-eight dollars).

"Failure to furnish abstract of title within the time aforesaid may be treated by party of the second part as a default hereunder, or as an extension of option period equal to delay in furnishing abstract.

. . .

"It is understood that party of the second part desires to use said property, if purchased, for the construction and maintenance thereon of petroleum merchandising service station, which may require the securing of a permit therefor from City, Town, County or State authorities, and that if such permit cannot be obtained, parties of the first part, upon surrender of this option, will return to party of the second part the consideration paid herefor."

—and was signed by the Coopers, as parties of the first part, and by Roell, as party of the second part.

On the day following the signing of the option, the investment company ordered an abstract of the property from the defendant on the regular blank used by it for that purpose. This order requested an abstract of title to the lot above described, stated the title was vested in N. B. Cooper and was signed by the investment company, and ordered the abstract delivered to it. The abstract was completed and certified as of June 17, 1929, and delivered to the investment company on June 19th. There is no evidence that defendant, or any of its agents, had any knowledge of the specific purpose for which the abstract was desired, nor did it know that it was to be furnished to or for any particular person, except the investment company and the Coopers, though it did know that usually abstracts were desired for the pur-

pose of being furnished either to a purchaser or to a person intending to loan money on the property, although this was not invariably the case.

The investment company received the abstract and delivered the same to Roell, who gave a receipt to Cooper, the owner of the premises, acknowledging receipt of the abstract, which was signed by himself personally, and also a receipt to the investment company for the same abstract, which was signed "Continental Oil Company by E. B. Roell."

The option was afterwards assigned to plaintiff by Roell, and the abstract forwarded to plaintiff's attorneys in Denver, Colorado. It was examined by them, and they gave a written opinion thereon, pointing out seventeen matters, shown in the abstract, that required investigation. A deed in the chain of title, which we shall hereinafter call the Christy deed, was shown by the abstract, which was said to contain certain building restrictions, as follows:

"That no saloon or place for the sale of intoxicating liquors, and no hospital, sanitarium, hotel or lodging house, used or occupied as such for the care of persons suffering from disease shall ever be permitted upon said premises. That no dwelling house shall be erected thereon to cost less than $2000 and the front wall of such building shall not be placed nearer than 35 feet of the front property line. Covenants attach to the land and run with the title hereto."

And plaintiff's attention was called to the fact that the title was subject to these restrictions, but no suggestion was made that there should be a further examination of the deed containing them. They further suggested that the abstract, and their opinion, be referred to Messrs. Chalmers, Fennemore & Nairn, well-known attorneys of Phoenix.

About the 1st of July, Roell brought the abstract to the office of these attorneys and interviewed Mr.

Fennemore. The latter was a property owner in the vicinity of the lot in question, and knew about the restrictions thereon. When he learned of the purpose of Roell's consultation, he informed him that he could not represent him as attorney in the matter, advising him that there were restrictions on the property that would prevent the erection of a service station. Roell then asked Fennemore to recommend some other attorney, and he referred him to Messrs. Cunningham & Carson and Mr. Moeur, of Phoenix. Shortly thereafter Roell appeared at the office of Cunningham & Carson and took the matter up with them, and after various investigations and correspondence, they advised plaintiff that the title was in satisfactory shape to close the purchase. Cunningham & Carson made an original investigation in the county recorder's office, of nearly all the matters referred to by the Denver attorneys in their opinion as affecting the title, with the exception of the one in regard to the building restrictions upon the property, but apparently did not examine the Christy deed which contained these restrictions. Thereafter, and on the eighth day of August, the deal was closed, and plaintiff paid the Coopers the balance still due of the $17,500.

Plaintiff thereupon commenced the erection of a gasoline and oil service station on the property. Fennemore and other property owners in the vicinity proceeded to file suit in the superior court enjoining them, on the ground that the restrictions in the Christy deed prevented the erection of such a structure. The matter finally came to this court, and the injunction was made permanent; the court holding that the restrictions found in the Christy deed did prevent its erection.

Thereafter plaintiff filed suit against Cooper, on account of an alleged breach of a warranty contained in the deed executed by him and his wife to the plain-

tiff, and shortly thereafter brought this suit against defendant, to recover damages alleged to have been sustained by it on account of its alleged reliance on the abstract.

The lot in question had passed through various mesne conveyances to the Coopers. In their chain of title there appears a deed made by Lloyd B. Christy and his wife, at that time the owners of the said lot, which contains the following provisions:

"It is hereby mutually covenanted and understood between the parties hereto that East Evergreen, within which the above described premises are situate and of which they constitute a part, has been platted and laid out as a choice and attractive residence addition to the City of Phoenix; and to protect all lot owners in the enjoyment of their respective lots therein, it is hereby covenanted on the part of the parties of the second part, their heirs, executors, administrators and assigns, that neither they nor any of them will erect or maintain or suffer or permit to be erected or maintained on the above described premises any building or structure other than a dwelling house, hotel, lodging house or boarding house, with the necessary and usual outbuildings, and that no saloon or place for the sale of intoxicating liquors and .no hospital, sanitarium, hotel, boarding or lodging house used or occupied as such for the care, lodging and entertainment of persons suffering from disease, and no building used or occupied for any purpose that shall depreciate the value of the neighboring property for dwelling house purposes shall ever be maintained, kept or permitted upon said premises or any part thereof.

"Said second parties for themselves, their heirs, executors, administrators and assigns, further covenant and agree that neither they nor any of them shall or will construct, build or maintain on said premises any dwelling house, hotel, boarding or lodging house which shall cost to construct less than Two thousand ($2000) Dollars, and that the front line of such building shall not be erected nearer than thirty-five (35) feet to the front boundary line of said

premises, and only one house shall be built on one lot, except that on the corners of fifth and seventh streets where additional buildings may be constructed on rear of lot not nearer than one hundred twenty-five (125) feet from the front line of said premises; that on lots fronting on third street, buildings must not be nearer than thirty-five (35) feet to the front or side lines of streets and no stable or out-house nearer than one hundred (100) feet from front or seventy feet from side lines of streets. On all other lots, stables and out-buildings must not be constructed nearer than one hundred and twenty-five (125) feet from the front line and on 5th and 7th Street corner lot thirty-five (35) feet from the side line of said premises.

"These covenants are understood and agreed to be and shall be taken and held to be for the benefit of all lot owners be they such now or become such hereafter.

"And the said grantors hereby covenant and agree that covenants substantially the same as these of the grantee shall be inserted in and made a part of all deeds and conveyances of lots in said East Evergreen, made and executed by us after date of filing plat, provided, however, that the minimum cost of building to be erected on any lot or lots in said East Evergreen shall never be fixed at less than Two thousand ($2000) Dollars, and the building line at less than thirty-five (35) feet from the front boundary line of said lots."

In the abstract of title furnished by defendant, this deed from the Christys is abstracted, with the only provision referring to any restriction being that previously set forth herein; no reference being made in the abstract to any other building restrictions on the lot. It will readily be seen by comparing the restrictions set forth in the deed itself with those set forth in the abstract, that they are very different indeed, the former being much broader in their nature. Under the restrictions, as set forth in the abstract, a purchaser of the premises could use the

lot for any legitimate purpose he might desire, except a "saloon or place for the sale of intoxicating liquor," or a "hospital, sanitarium, hotel or lodging house, used or occupied as such for the care of persons suffering from disease." Under the restrictions in the deed, the only purposes for which the lot could be used was a "dwelling house, lodging house or boarding house, with the necessary and usual out-buildings." It is obvious that the abstract materially varied from the terms of the deed, and it is further obvious that anyone relying on the abstract as showing all the restrictions on use of the lot would be deceived as to the true situation.

It is practically admitted by defendant that the variance is indeed a material one, but it is contended that the mere reference to certain restrictions in the deed was sufficient to put an intending purchaser on inquiry as to whether or not there might not be other and greater restrictions. We cannot agree with this contention. Had the abstract merely referred to the deed, and stated that the title was subject to the restrictions contained therein, it might be held it was the duty of a purchaser to examine the deed itself to ascertain what those restrictions were. When, however, the abstract attempted to recite the restrictions of the deed, but only gave part of them, with nothing in the abstract to show that it was but a partial recital, the situation is different, and we think that the old maxim of *"expressio unius"* applies, and that a customer might rely upon the abstract as setting forth the only restrictions which appeared in the deed, and that if there are others, which are material, the abstracter is liable for his failure to show them. *Equitable Bldg. & Loan Assn.* v. *Bank of Commerce & Trust Co.*, 118 Tenn. 678, 102 S. W. 901, 12 Ann. Cas. 407, 12 L. R. A. (N. S.) 449. We are of the opinion that the failure of the abstracter to include in the abstract in question the building restric-

tions which the record shows clearly were omitted therefrom was, as a matter of law, negligence.

This brings us to what we consider the vital element of the case, and that is whether or not the plaintiff had the right to rely upon the representations of defendant in regard to the abstract. It is agreed by all the authorities that the liability of an abstracter for damages resulting from his honest mistakes is based upon contract, and not upon tort, and the abstracter therefore is not liable to persons who may be misled to their damage by reason of his negligence, unless there is some privity of contract between them. The general principle is so thoroughly established that it would seem unnecessary to cite any cases in support thereof. They are collated in the notes to 1 C. J. 369, § 12, and 1 R. C. L. 94, § 7. Indeed, plaintiff does not contend that this is not the general rule, but claims that this case falls under one or more of the recognized exceptions thereto.

These exceptions, apparently, are four in number:

First, where there is a statute requiring abstracters to file bonds, and providing that there shall be liability thereon in favor of any person injured by defects in the abstracts prepared by them. In such cases the action is based on the statute, and not upon the contract, and privity of contract is not necessary. *Merrill* v. *Fremont Abstract Co.*, 39 Idaho 238, 227 Pac. 34. The present case does not come within this exception, for no such statute exists in Arizona.

The second exception is where the agent acts for an undisclosed principal. This follows from the usual rules of law pertaining to principal and agent. Where a contract is entered into by an agent for the benefit of an undisclosed principal, the principal is liable on the contract, and therefore may likewise enforce it, even though the agent did not disclose the principal at the time the contract was made. But in this case no such relationship existed between the

investment company, which ordered the abstract from defendant, and plaintiff. The undisputed evidence shows that the investment company was the agent of Cooper, the owner of the lot in question; that by the terms of the option of sale, it was Cooper's duty to furnish an abstract of title; and that he did furnish and pay for the one involved in this action. Neither plaintiff nor Roell, its agent, can in any manner be held to be undisclosed principals of the party which actually ordered the abstract.

The third exception is where the original abstract is reissued to the third party. The only acts which might be claimed as a reissuance were certain continuances of the abstract, made after August 8th. Since the purchase was completed on this date, plaintiff cannot contend it relied on either of the continuances in buying the property. But such additions to the abstract are not reissuances thereof, since it does not appear that therein defendant recertified the original abstract. *Arnold & Co.* v. *Barner,* 91 Kan. 768, 139 Pac. 404; Id., 100 Kan. 36, 163 Pac. 805.

The fourth exception is where the abstract is made for the benefit of a third person, and it is apparently upon this exception that the plaintiff chiefly relies. It cites as supporting its contention on this point the case of *Stewart* v. *Sirrine,* 34 Ariz. 49, 267 Pac. 598, 601, where we said:

" . . . We think it is the well-settled rule of law that where one person agrees with another, on a sufficient consideration, to do a thing for the benefit of a third person, the third person may enforce the agreement, and it is not necessary that any consideration move from the latter. It is enough if there is a sufficient consideration between the parties who make the agreement. . . . "

This, of course, is merely a statement of a well-known general principle of law, but it does not apply

to every case where a third person will benefit from the performance of an agreement. In nearly all, if not all, of the cases where such a person is given the right to sue on a contract, it must appear affirmatively that both the promisor and promisee knew of his existence and *intended the promise to be for his benefit.* If a promise is meant and understood by the promisor to be for the benefit of the promisee only, it is not sufficient that the promisee alone may have intended a third person to receive its benefit.

Probably the leading case on the subject of the liability of an abstracter to third persons is that of *National Sav. Bank* v. *Ward,* 100 U. S. 195, 25 L. Ed. 621. Therein an attorney prepared an abstract for a client, on the strength of which a third party loaned money to the client. The court held that under such circumstances, if the attorney had no knowledge of the specific use to which the abstract was to be put, he was not liable to the party who loaned the money. This case has been cited and followed repeatedly. Indeed, plaintiff does not seriously contend that the general rule is not as stated therein, but urges that when the abstracter knows, or has reason to know, that the abstract is to be used for the benefit of some indefinite and unknown person, the rule does not apply. In support of such contention it cites the case of *Anderson* v. *Spriestersbach,* 69 Wash. 393, 125 Pac. 166, 42 L. R. A. (N. S.) 176; *Dickle* v. *Nashville Abstract Co.,* 89 Tenn. 431, 14 S. W. 896, 24 Am. St. Rep. 616; *Peabody Bldg. & Loan Assn.* v. *Houseman,* 89 Pa. 261, 33 Am. Rep. 757; *Denton* v. *Nashville Title Co.,* 112 Tenn. 320, 79 S. W. 799; *Shine* v. *Nash Abstract & Invest. Co.,* 217 Ala. 498, 117 So. 47; *Equitable Bldg. & Loan Assn.* v. *Bank of Commerce & Trust Co., supra.* We have examined carefully each and all of these cases, and are of the

opinion that they do not bear out the contention of plaintiff.

In *Anderson* v. *Spriestersbach, supra,* the abstracter was instructed to deliver the abstract to the third party, and therefore knew the specific person who was to be the beneficiary and who would rely upon the abstract.

In *Dickle* v. *Nashville Abstract Co., supra,* it appears that the abstract company prepared the deed from the owner to the purchaser and therefore knew for whose benefit the abstract was intended.

In *Peabody Bldg. & Loan Assn.* v. *Houseman, supra,* the abstracter knew affirmatively from whom the owner of the land was seeking to obtain a loan, and deliberately made a false abstract at the request of the latter. Under these circumstances the abstracter might well have been liable in an action of fraud, but at all events he did know who intended to rely on the abstract.

In *Denton* v. *Nashville Title Co., supra,* the court does say in general terms that since the abstracter knew the abstract was to be used for the purpose of making a sale, the plaintiff was entitled to recover, but it cites the Dickle case, above, as authority therefor, and, as we have seen, in that case the abstract company knew for whose benefit the abstract was desired. Further, the later case of *Equitable Bldg. & Loan Assn.* v. *Bank of Commerce & Trust Co., supra,* from the same jurisdiction, impliedly limits the exception to cases where the abstracter knew who intended to rely on the abstract.

In *Shine* v. *Nash Abstract & Invest. Co., supra,* it was alleged that the plaintiff, the purchaser of the premises, received the abstract directly from the defendant in the case, which, of course, would imply knowledge on the part of the defendant of the specific purpose for which the abstract would be used. Incidentally this case cites in full, and apparently relies

to a very great extent, upon the case of *Glanzer* v. *Shepard*, 233 N. Y. 236, 135 N. E. 275, 23 A. L. R. 1425, which case we shall discuss more fully later in this opinion.

In the case of *Equitable Bldg. & Loan Assn.* v. *Bank of Commerce & Trust Co., supra,* the court laid down the general rule that an abstracter is not liable to a third person unless there is a republication of the abstract, and held on the facts of the particular case that there was no knowledge of the defendant of the purpose for which the abstract would be used, and therefore no liability.

On the other hand, there are a number of cases in which it was urged that if the abstracter knew that it was the custom that abstracts were used for the purpose of making sales or loans, he was liable to an unknown party who did make a purchase or loan on the strength of the abstract. In all of these cases it is specifically held that custom, while it may explain, cannot make a contract, and that under such circumstances the unknown third party had no right of recovery. *Equitable Bldg. & Loan Assn.* v. *Bank of Commerce & Trust Co., supra; Ohmart* v. *Citizens' Savings & Trust Co.,* 82 Ind. App. 219, 145 N. E. 577; *Thomas* v. *Guarantee T. & T. Co.,* 81 Ohio St. 432, 91 N. E. 183, 26 L. R. A. (N. S.) 1210; *Talpey* v. *Wright,* 61 Ark. 275, 32 S. W. 1072, 54 Am. St. Rep. 206; *National Iron & Steel Co.* v. *Hunt,* 312 Ill. 245, 143 N. E. 833, 34 A. L. R. 63.

One of the best discussions of the rule, and the exceptions thereto, with the limitations of the latter, is found in the case of *Ultramares Corp.* v. *Touche et al.,* 255 N. Y. 170, 174 N. E. 441, 446, 74 A. L. R. 1139. In the case of *Glanzer* v. *Shepard, supra,* certain public weighers had made a certificate as to the weight of certain bags of beans, at the request of the seller, who paid for the certificate, and delivered it to the purchaser of the beans. The latter purchased

upon the strength of the certificate and afterwards discovered that the beans were short in weight, and brought suit against the weighers for negligence in the weighing of the beans and making of the certificate. Judge CARDOZO, now a member of the Supreme Court of the United States, wrote the opinion in which the weighers were held liable. Thereafter, in the case of *Ultramares Corp.* v. *Touche,* 229 App. Div. 581, 243 N. Y. Supp. 179, the Appellate Division of the Supreme Court of New York, by a vote of three to two, held that, under the decision in the Glanzer case, public accountants who certified to an erroneous balance sheet made for a business concern, where they knew that the certificate would be used to represent the condition of the company to persons from whom it might borrow money, but did not know of any particular person by whom the certificate was to be used, were liable to the person who actually loaned money on the strength thereof. This case was taken to the Court of Appeals, and Judge CARDOZO, who had written the opinion in the Glanzer case, pointed out that the majority opinion in the Appellate Division of the Supreme Court misinterpreted the decision in that case. His general discussion goes so fully into the reason for the exception to the general rule that only a beneficiary who is definitely known to the promisor falls within the exception, and not the public in general, that we quote therefrom. After reciting the facts in the Glanzer case, and pointing out that the promisor was specifically directed by the promisee to deliver the certificate in question to the third party, for whose benefit it was understood by all of the parties it was to be, he says in reference to the facts in the Ultramares case:

" . . . No one would be likely to urge that there was a contractual relation, or even one approaching it, at the root of any duty that was owing from the defendants now before us to the indeterminate class

of persons who, presently or in the future, might deal with the Stern Company in reliance on the audit. In a word, the service rendered by the defendant in *Glanzer* v. *Shepard* was primarily for the information of a third person, in effect, if not in name, a party to the contract, and only incidentally for that of the formal promisee. In the case at hand, the service was primarily for the benefit of the Stern Company, a convenient instrumentality for use in the development of the business, and only incidentally or collaterally for the use of those to whom Stern and his associates might exhibit it thereafter. Foresight of these possibilities may charge with liability for fraud. The conclusion does not follow that it will charge with liability for negligence.''

Applying this to the facts of the present case, so far as defendant's knowledge went, the services were for the benefit of the Coopers, a convenient instrumentality for them to use in the sale of their property, and only incidentally or collaterally for the use of those to whom the Coopers might exhibit it thereafter.

Judge CARDOZO then continues as follows:

''Liability for negligence if adjudged in this case will extend to many callings other than an auditor's. Lawyers who certify their opinion as to the validity of municipal or corporate bonds, with knowledge that the opinion will be brought to the notice of the public, will become liable to the investors, if they have overlooked a statute or a decision, to the same extent as if the controversy were one between client and adviser. Title companies insuring titles to a tract of land, with knowledge that at an approaching auction the fact that they have insured will be stated to the bidders, will become liable to purchasers who may wish the benefit of a policy without payment of a premium. These illustrations may seem to be extreme, but they go little, if any, farther than we are invited to go now. Negligence, moreover, will have one standard when viewed in relation to the employer, and another and at times a stricter standard when viewed in relation to the public. Explana-

tions that might seem plausible, omissions that might be reasonable, if the duty is confined to the employer, conducting a business that presumably at least is not a fraud upon his creditors, might wear another aspect if an independent duty to be suspicious even of one's principal is owing to investors. 'Every one making a promise having the quality of a contract will be under a duty to the promisee by virtue of the promise, but under another duty, apart from contract, to an indefinite number of potential beneficiaries when performance has begun. The assumption of one relation will mean the involuntary assumption of a series of new relations, inescapably hooked together.' *Moch Co.* v. *Rensselaer Water Co., supra,* at page 168 of 247 N. Y., 159 N. E. 896, 899 [62 A. L. R. 1199]. 'The law does not spread its protection so far.' *Robins Dry Dock & Repair Co.* v. *Flint, supra,* at page 309 of 275 U. S., 48 Sup. Ct. 134, 135 [72 L. Ed. 290].''

We think the logic of his argument is unanswerable. So long as it is held that the liability of an abstracter is in contract and not in tort, we are of the opinion that a third party, whose very existence is unknown to the abstracter at the time he issues his abstract, may not sue for the negligence of the latter in preparing it. It may be that the legislature, in its wisdom, will eventually decide that abstract companies should, as a matter of public policy, when they issue an abstract, be made guarantors to the world at large, for all time to come, that it is correct. In such a case, the liability will rest upon the express terms of the statute and not upon contract, and the companies, knowing of their responsibility, may and doubtless will regulate their charges accordingly. But such a change in the universal rule, upon which all parties in the business of giving information for hire have in the past relied, should not be made by the courts.

We are of the opinion that upon the entire record in the present case there was no privity of contract

between plaintiff and defendant in regard to the furnishing of the abstract in question, and that plaintiff does not come within any of the exceptions to the rule recognized by the courts. Such being the case, the trial court should have instructed a verdict in favor of defendant.

There are a number of other questions raised on this appeal, but while we have examined them, we think, in view of what we have already said, it is unnecessary for us to discuss them. This does not mean, however, that plaintiff has no remedy for the loss which it has apparently suffered. It has already, according to the record, pursued the proper remedy by suing the vendor of the premises upon his contract with it, and he may, in turn, fall back upon the defendant in a proper action. For the foregoing reasons the judgment of the superior court of Maricopa county is reversed, and the case remanded for a new trial in accordance with the principles laid down herein.

ROSS, C. J., and McALISTER, J., concur.