540 P.2d 763

**Robert VAN BUREN and Patsy Van Buren, Appellants,**

v.

**PIMA COMMUNITY COLLEGE DISTRICT BOARD, Appellee.**

**No. 2 CA–CIV 1870.**

Court of Appeals of Arizona, Division 2.

Oct. 1, 1975.

Rehearing Denied Nov. 7, 1975.
Review Granted Dec. 9, 1975.

---

Stuart Herzog, Tucson, for appellants. Stolkin, Weiss & Tandy by Marshall D. Tandy, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

This action was based upon fraudulent or negligent misrepresentation. The trial court awarded appellants damages in the sum of $3,000. Appellee has not cross-appealed on the issue of liability and the only issues on appeal are whether the damages awarded are adequate and whether the trial court erred in not awarding punitive damages.

In April of 1972 appellants were both employed as high school teachers in Fairbanks, Alaska and had attained tenure. Their contracts for the 1972–1973 school year had already been renewed. Mr. Van Buren was contacted by Pima Community College and offered a teaching contract for the school year 1972–1973. The Van Burens resigned their teaching positions in Alaska and Mr. Van Buren signed a contract to teach at Pima Community College.

The position at Pima College for which Mr. Van Buren was hired was "specially funded" which meant that he was not to be paid from the general college fund, but from a separate fund. In other words, his position depended upon the existence of this special fund.

At the end of the 1972–1973 school year, Mr. Van Buren was recommended for a contract renewal. His contract was not renewed, however, because the special funds were no longer available. He then took a high school teaching position and his wife was only able to obtain a part-time teaching job.

Prior to the time his contract was not renewed Mr. Van Buren had no knowledge that his position was dependent upon the existence of special funds. Although the college knew the position was specially funded, the individual with whom Mr. Van Buren negotiated the contract never mentioned it. The president of Pima Community College testified that the fact that a position is specially funded should be disclosed to a prospective teacher prior to entering into a contract and that it was a custom or practice of the community colleges in Arizona to make such a disclosure. There was further testimony that teachers who are paid from the general fund can reasonably expect their contracts to be renewed.

When they moved to Tucson, appellants sold their home in Alaska and incurred certain expenses in traveling here. They testified that had they known that Mr. Van Buren's position was specially funded they would have remained in Alaska.

Appellants claimed as damages the following items: (1) The difference between their salaries in Alaska for the school years 1972 through 1975 in the sum of $50,774. (2) Moving costs—$1,000. (3) Loss of savings—$2,000. (4) Loss of proceeds from sale of house—$700. (5) Loss of retirement funds—$6,000. (6) Money borrowed—$2,400, for a total of $62,874 plus punitive damages.

In order to assess the adequacy of the damages in this case we must determine two things: (1) What is the basis of liability? (2) What is the measure of damages? Since the record is devoid of any evidence of intent to defraud, it is apparent that the basis of liability is negligent misrepresentation.

A cause of action for damages for negligent misrepresentation was first recognized in Arizona in the case of *Phoenix Title & Trust Company v. Continental Oil Company*, 43 Ariz. 219, 29 P.2d 1065 (1934). The court held that liability in such cases is based upon contract and not upon tort and stated that there must be some privity of

contract between the parties. The issue was not dealt with again until 1971 in the case of *Arizona Title Insurance & Trust Company v. O'Malley Lumber Company,* 14 Ariz.App. 486, 484 P.2d 639 (1971).[1]

Phoenix Title, supra, reflects the fear of courts in allowing a cause of action based upon tort when the damages sought are not for injury to person or property, but rather for the invasion of intangible economic interests. As was stated by Justice Cardozo in *Ultramares Corporation v. Touche,* 255 N.Y. 170, 174 N.E. 441, 444 (1931):

> "If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences." [2]

The court in *Arizona Title Insurance & Trust Company v. O'Malley Lumber Company,* supra, deftly and justifiably sidestepped the privity of contract requirement enunciated in the *Phoenix Title* case by holding that privity of *contact* sufficed to limit the field of possible plaintiffs. It stated:

> "We think that the Phoenix Title case is clearly distinguishable, and that the reasoning of the leading authorities in the area, cited *supra,* supports liability to an *identified* representee to whom the defendant makes a *direct* representation." (Emphasis theirs) 14 Ariz.App. at 493, 484 P.2d at 646.

The upshot of the *Arizona Title* case (review was denied by the Arizona Supreme Court), is that there is a cause of action in tort for damages for negligent misrepresentation, however, the field of possible plaintiffs has been narrowed to allay the fears expressed in *Ultramares,* supra.

■ Even though appellee has not cross-appealed on the issue of liability we have engaged in this discussion of liability since it is implicit in appellee's claim that the damages awarded were sufficient in that Mrs. Van Buren's loss of salary was not cognizable since there was neither privity of contract nor privity of contact with her. We do not agree with this contention. Mrs. Van Buren was an identified person known to appellee. Appellee knew that both husband and wife would rely upon the misrepresentation made to him and act thereon; and further intended that they both do so. Under such circumstances Mrs. Van Buren's damages can be recovered. See, Prosser, Law of Torts, supra, Sec. 107 p. 707.

■ This brings us to the issue of damages. As noted in the *Arizona Title* case, there is disagreement as to whether the proper form of action is one for negligence, subject to the usual negligence defenses, or one for fraud, but without the element of scienter, or perhaps a hybrid form of action. We need not decide this issue since under any of the foregoing theories, the damages recoverable in this case would be the same, to wit: damages for any injury which is the direct and natural consequence of appellants acting on the faith of appellee's representations.

---

1. This case points out that Arizona has recognized a cause of action for innocent misrepresentation which allows *rescission.* *Lenhardt v. City of Phoenix,* 105 Ariz. 142, 460 P.2d 637 (1969). According to the opinion in Arizona Title, supra, the existence of a cause of action for damages for negligent misrepresentation has not been recognized in this state. We do not agree with this statement based upon our analysis of Phoenix Title, supra.

2. See also Smith, Liability for Negligent Language, 1909, 14 Harvard L.Rev. 184, 195; Seavey, Mr. Justice Cardozo and the Law of Torts, 1939, 52 Harvard L.Rev. 372, 400; Prosser, Law of Torts, 4th Ed., Sec. 107, pp. 704–710 (1971).

The trial court evidently awarded appellants their moving costs in the sum of $1,000 and the $2,000 that was in their savings account in Alaska. They were not entitled to recover the $6,000 they withdrew from their retirement accounts since this money was invested in a home in Tucson and there was therefore no loss.[3] Nor was there any loss in the sale of their home in Alaska.

As for any damages claimed after the 1972–1973 school year, appellants are from Yuma and their parents reside there. Appellants made no inquiry as to the possibility of being rehired in Alaska. One of the contributing factors in their decision to move back to Arizona was the harsh Alaskan winters. They had made inquiries in the past to other junior colleges about job positions in Arizona. From this evidence the trial court could have legitimately concluded that the losses allegedly incurred after the 1972–1973 school year were not the direct and proximate result of appellee's misrepresentation but were the result of appellants' decision to remain in Arizona.

As for the difference between Mr. Van Buren's Alaskan salary for 1972–1973 and his salary from Pima College for that school year, testimony presented concerning the higher cost of living in Alaska would support a conclusion by the trial court that there was in reality no loss. However, there was no attempt on appellee's part to show that Mrs. Van Buren's loss for the same school year was similarly reduced. There was testimony that Mrs. Van Buren had no intention, when they came to Tucson, of working for the first year. This does not bar her from recovery of the salary loss since but for appellee's misrepresentation she would have remained in Alaska and would have received her salary. Therefore, Mrs. Van Buren's salary for the 1972–1973 school year, the sum of $13,650, should have been awarded to appellants.

As for punitive damages, we cannot gainsay the decision of the trial court not to allow them.

The judgment is modified to award the sum of $16,650 to appellants and, as modified, we affirm.

KRUCKER and HATHAWAY, JJ., concurring.

---

3. The State of Alaska matched the employees' money in the retirement fund, but there was no showing that employees had any vested right in the State's contribution prior to retirement.