[Civ. No. 17776. First Dist., Div. One. Nov. 14, 1958.]

JOHN H. HAWKINS et al., Appellants, v. OAKLAND TITLE INSURANCE AND GUARANTY COMPANY (a Corporation), Respondent.

M. F. Hallmark and Gilbert D. Calden for Appellants.

Price, MacDonald & Knox and Robert W. MacDonald for Respondent.

ST. CLAIR, J. pro tem.*—Plaintiffs appeal from a judgment entered after the sustaining of a demurrer to their complaint without leave to amend.

### Statement of the Case

The first cause of action in the complaint alleged that in 1943 plaintiffs Hawkins purchased certain real property in Berkeley for $13,000 and that concurrently with the purchase of the property plaintiffs paid defendant for a title insurance policy for that amount on the property.

On November 6, 1953, plaintiffs Hawkins transferred the

*Assigned by Chairman of Judicial Council.

property to plaintiff Bayshore Investment Corporation in return for shares of capital stock of the corporation.

Prior to the discovery hereinafter referred to, plaintiffs Hawkins built a service station on the property at a cost of $25,000.

On December 3, 1954, plaintiffs discovered a deed recorded on March 22, 1938, from Marie Bullard to the State of California deeding "the access rights from the property hereinbefore described to the said Eastshore Highway save and except through a service road," a deed not mentioned in the title policy.

As to damages, the only allegation in count one read, "That solely by reason of the defendant's failure to advise plaintiffs John H. Hawkins and Landona Hawkins of the deed granting said access and plaintiffs John H. Hawkins' and Landona Hawkins' construction of said service station, plaintiffs, John H. Hawkins and Landona Hawkins have been damaged in a sum in excess of $13,000.00."

The prayer to count one was that the plaintiffs Hawkins be granted judgment against defendant for $13,000 and general relief.

The second cause of action alleged that in the title policy defendant falsely represented to plaintiffs in and by the title policy that their property was free and clear of all encumbrances except those specifically disclosed in the title policy; that said representations were carelessly and recklessly made by defendant in a manner not warranted by the information available to it, to wit, the public records of Alameda County; that by the exercise of ordinary care defendant would have known the falsity of said representations; that in reliance upon these representations plaintiffs spent $13,000 for the property and $25,000 for improvements. The allegation as to damage is solely by reason of said representations plaintiffs John H. and Landona Hawkins were damaged in the sum of $38,000. The prayer is by the Hawkins for damages in the amount of $38,000 and general relief.

In the third cause of action (the first count for plaintiff Bayshore Investment Corporation) plaintiff Bayshore Investment Corporation brought forward and incorporated the allegations of the first cause of action and alleged that it acquired the land by reason of the Hawkins plaintiffs "consolidating and merging their interest in said land into and with plaintiff Bayshore Investment Corporation, a corporation; that in said merger and consolidation, plaintiff Bayshore

Investment Corporation, a corporation, issued shares of its capital stock equally to John H. Hawkins and Landona Hawkins, of a value in excess of the sum of $13,000; that plaintiff Bayshore Investment Corporation, a corporation, by issuing its said stock and by reason of defendant's failure to notify John H. Hawkins and Landona Hawkins and by reason of Bayshore Investment Corporation's, a corporation, issuance of said stock, plaintiff Bayshore Investment Corporation, a corporation, has been damaged in a sum in excess of $13,000.00.''

The Bayshore Investment Corporation then goes on to further plead: ''That solely by reason of defendant's failure to advise plaintiffs JOHN H. HAWKINS and LANDONA HAWKINS and BAYSHORE INVESTMENT CORPORATION, a corporation, of the deed granting said access, plaintiff BAYSHORE INVESTMENT CORPORATION, a corporation, has been damaged in a sum in excess of $13,000.00.''

The prayer is by Bayshore Investment Corporation for damages in the amount of $13,000.

The fourth cause of action (the second for Bayshore Investment Corporation) incorporated the allegations of the second and further alleged that ''plaintiffs JOHN H. HAWKINS and LANDONA HAWKINS, in reliance upon said representations of defendant, expended $13,000.00 on the purchase of said real property and in addition expended the sum of $25,000.00 in the construction of a service station on said property; that thereafter, plaintiffs JOHN H. HAWKINS and LANDONA HAWKINS, merged and consolidated their interest in said real property and improvements with plaintiff, BAYSHORE INVESTMENT CORPORATION, a corporation, and plaintiff, BAYSHORE INVESTMENT CORPORATION, a corporation, issued 400 shares of its capital stock to each of the plaintiffs, JOHN H. HAWKINS and LANDONA HAWKINS on the basis that said real property and improvements were of a value in excess of $38,000.00; that said capital stock was issued to JOHN H. HAWKINS and LANDONA HAWKINS solely by said representations and plaintiff BAYSHORE INVESTMENT CORPORATION, a corporation, would not have issued said stock save and except for said representations and that by reason of the issuance of said capital stock plaintiff BAYSHORE INVESTMENT CORPORATION, a corporation, has been damaged in the sum of $38,000.00.''

The title policy which is appended as an exhibit to the complaint provides that the defendant ''does hereby insure John H. Hawkins and Landona Hawkins together with each

successor in ownership of any indebtedness secured by any mortgage or deed of trust shown in Schedule B, the owner of which is named as an insured, and any such owner or successor in ownership of any such indebtedness who acquires the land described in Schedule C, or any part thereof, by lawful means in satisfaction of said indebtedness or any part thereof, and any person or corporation deriving an estate or interest in said land, as an heir or devisee of a named insured, or by reason of the dissolution, merger, or consolidation of a corporate named insured, against loss or damage not exceeding thirteen thousand and no/100 ($13,000.00) dollars, which any insured shall sustain . . . by reason of any defect in, or lien or encumbrance on said title, existing at the date thereof, not shown in Schedule B; . . . all subject, however, to Schedules A, B and C and the stipulations herein, all of which schedules and stipulations are hereby made a part of this policy.''

The property is described in Schedule C as certain lots ''excepting therefrom that portion thereof conveyed by Marie Sellar Bullard to the State of California, by deed dated February 20, 1936, recorded April 8, 1936 in book 3296 of Official Records of Alameda County, page 307.''

In the ''Stipulations'' portion of the policy, paragraph one provides that the policy does not insure against '' (a) defects, liens, claims, encumbrances, or other matters which result in no pecuniary loss to the insured. . . .''

### First Cause of Action

The first count is for damages for breach of the contract of title insurance. The policy was pleaded and examination thereof indicates it insures against ''pecuniary loss.''

In the case of *Title Ins. & Trust Co.* v. *City of Los Angeles,* 61 Cal.App. 232 [214 P. 667], the court in holding that a title insurance policy was a contract of guaranty and that the title insurance company was liable as a guarantor, said at page 236: ''But in the case of a certificate like that now before us, the party entitled to the benefit of the guaranty has a right of action to recover upon the contract contained in the certificate itself, and the liability is one that does not accrue until discovery of the loss that may be incurred if the title is not as represented in the certificate.''

The fact that a title company was liable for all damages proximately caused by a breach of contract was established in the case of *Mitchell* v. *California-Pacific T. Ins. Co.,* 79

Cal.App. 45, at page 50 [248 P. 1035] : "As against respondent Bakersfield Abstract Company, whose obligation was contractual [cases cited], the relief to which appellant would be entitled, a breach of duty under the contract being shown, is the amount which would compensate for all the detriment proximately caused thereby (Civ. Code, § 3300)."

The defendant contends that the Hawkins suffered no pecuniary loss under the policy because they exchanged the land for stock of a par value equal to the value of the land plus the improvements. The Hawkins argue that the value of the stock reflects the value of the corporate assets, and if the assets are depressed in value through a defect in the title of the property, the value of the stock is similarly depressed. Their position is that the diminution in value of the stock, if any, is a matter of proof at the trial. If the corporation were the Hawkinses' *alter ego,* or the property its only asset, the Hawkinses would have suffered a pecuniary loss even though a paper transaction had been completed that would have resulted in no loss had the realities of the situation been different.

In *Going* v. *Dinwiddie,* 86 Cal. 633, 637 [25 P. 129], the court stated that a "complaint, to be sufficient, must contain a statement of facts which, without the aid of other conjectured facts not stated shows a complete cause of action."

In the instant case, it is only with the aid of conjecture that it can be concluded that the Hawkins plaintiffs might have sustained some loss. Only the exchange is alleged, and had the plaintiffs proved only this at the trial, they would not be entitled to recovery. Having only pleaded this, it would seem that the complaint is vulnerable to a general demurrer.

There also appears to be a more basic defect in the complaint. It nowhere alleges that the defect reduces the market value of the land. In *Overholtzer* v. *Northern Counties Ins. Co.,* 116 Cal.App.2d 113, 124 [253 P.2d 116], the court stated that to recover under a title insurance policy, "So far as pleading and proof are concerned, an allegation and proof of the existence of the easement and of diminution in the market value are all that is required." So far as appears from the complaint, the land may be worth as much without access rights to a highway as with access rights. It is alleged that a service station was built on the property, and normally access rights to a highway would be thought to be valuable to such a structure. However, it might be that the station is visible from the highway, and access through the service road

is adequate. It might be that denial of access except through certain turnoffs encourages traffic on the highway and makes the property more valuable for a service station than it would otherwise be. Without this basic allegation of diminution in value, it would seem that in any event plaintiffs have not stated a cause of action under the policy.

The demurrer was to the original complaint, and no opportunity for leave to amend was given. In *Temescal Water Co.* v. *Department of Public Works*, 44 Cal.2d 90, 107 [280 P.2d 1], the court held that a petition did not state grounds for the issuance of a writ of mandate but reversed a judgment after the sustaining of a demurrer without leave to amend with directions to the trial court to "permit the appellants to amend their petition, if they be so advised." ■ The court stated, "Generally, it is held to be an abuse of discretion to sustain without leave to amend a demurrer to an original complaint, unless the complaint shows on its face that it is incapable of amendment. (*King* v. *Mortimer*, 83 Cal.App.2d 153, 158 [188 P.2d 502].)" (See also *Lemoge Electric* v. *County of San Mateo*, 46 Cal.2d 659, 664 [297 P.2d 638].) No express request to amend would be necessary. (Code Civ. Proc., § 472c.)

■ Plaintiffs Hawkins should be permitted to amend their first cause of action if they be so advised.

### Second Cause of Action

■ The second count sounds in tort. Both parties treated it as an attempt to state a cause of action for damages by reason of negligence on the part of the defendant. While there may be some deficiencies in the pleading, it sufficiently raises the basic question of whether or not, in California, one can sound in damages against the other contracting party for negligently searching the records as a preliminary to performing under the contract.

The problem was foreshadowed in *Lattin* v. *Gillette*, 95 Cal. 317 [30 P. 545, 29 Am.St.Rep. 115]. Volume 1, California Jurisprudence 2d, Abstracts of Title, section 8, page 206, cites the Lattin case in support of this statement: "Generally speaking, the abstracter's obligation is contractual, and his contract determines the scope and extent of his examination. He is liable for breach of his contract, and he may also be held liable on a negligence theory for failure to exercise skill and care."

In *Overholtzer* v. *Northern Counties Ins. Co., supra,* 116

Cal.App.2d 113, at pages 128-129, the court said: "One of the major contentions of the Overholtzers on their appeal is that they should have been permitted to amend to conform to proof so as to allege a cause of action upon a claimed common law liability of the title company as abstracter—a liability claimed to exist that sounds in negligence for defective search of the title in the abstracting process. The question as to whether a title insurance company is liable not only as an insurer up to the face amount of the policy, but, where negligence can be shown, as an abstracter and in excess of the face amount of the policy, is an interesting one. In the briefs and supplemental briefs many cases and theories are discussed dealing with this problem. The cases are in conflict. Strong arguments can be made on each side of the controversy. We do not find it necessary to decide whether such liability exists in this state because it is our opinion that the point is not properly before us."

Plaintiffs rely on *J. H. Trisdale, Inc.* v. *Shasta etc. Title Co.*, 146 Cal.App.2d 831 [304 P.2d 832], decided since the Overholtzer case. In the Trisdale case the holder of a title policy pleaded two causes of action, one based upon the theory of breach of the terms of the title insurance policy, and the second upon the theory that the title company was negligent in searching the record and preparing the preliminary title report for the benefit of plaintiff. The complaint alleged "in detail that appellant purchased its property, and suffered the resulting damage, in reliance upon the report that had been ordered by its agent for its benefit and use, and that appellant was reasonably entitled to rely upon the state of the title revealed by the report." (P. 834.) The title company had erroneously reported an easement as being that of the telephone company instead of that of the electric company for the construction of an electric transmission line. Demurrers were sustained upon the ground that the "plaintiff was itself negligent in failing to inspect the record after being given notice" (p. 836) that an easement existed by reference to the page and book of the official records. The court on appeal rejected this contention, overruling the demurrer as to both causes of action. The court's discussion was devoted primarily to the relevance of plaintiff's negligence in failing to search the record, but the holding, reversing the sustaining of the demurrers to both counts, does indicate that there is a cause of action for negligence in searching the record.

The courts of almost every common law jurisdiction have

wrestled with this problem. The cases are legion and they come up with many and diverse results.

One way of viewing many of the results is to say that it is a case of the old axiom of hard cases make bad law. The attempt most often made is to broaden the measure of damages, as many courts can see that the measure of damages for breach of contract, especially where the "contemplation of parties" rule applies, is inequitable.

In 1 American Jurisprudence, Abstracts of Title, page 170, section 27, it is said: "An abstracter cannot according to the general rule be held liable in tort for negligence in making or certifying an abstract of title, although it has been asserted that a tort action may be founded upon the breach of a contract such as that by an abstracter.

"A situation closely akin to that in a tort action arises in these cases in that the care which is the measure of the abstracter's liability is defined in much the same way as care is defined in negligence actions."

As a note to the last quotation, the authors say: "Something of the same situation arises in actions against carriers, in actions against physicians and surgeons, etc. While the action is contractual, the measure of care is defined much the same as in negligence actions."

 The authors of the Restatement of Torts have forthrightly faced up to the problem. Section 552 reads: "One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if (a) he fails to exercise that care and competence in *obtaining* and *communicating* the information which its recipient is justified in expecting, and (b) the harm is suffered (i) by the person or one of the class of persons for whose guidance the information was supplied, and (ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith."

In their comment on the above they say: "f. *Information supplied directly and indirectly.* The person for whose guidance the information is supplied is often the person who has employed the supplier to furnish it, in which case, if it is supplied for a consideration paid by such person, he has at his election either a right of action under the rule stated in this Section or a right of action upon the contract under which the information is supplied."

The Restatement appears to be based on the New York cases. Indeed, in the California Annotation to the above section 552, it is so stated.

In *Canfield* v. *Security-First Nat. Bank,* 13 Cal.2d 1, 30-31 [87 P.2d 830], the court said: "Although it is true as urged by respondents that the restatement does not constitute a binding authority, considering the circumstances under which it has been drafted, and its purposes, in the absence of a contrary statute or decision in this state, it is entitled to great consideration as an argumentative authority. It purports to accurately reflect the general common law of the United States, and where there is a conflict, to state the general and better rule on any given subject."

Section 552 of the Restatement on Torts has been approved by the Supreme Court in general, albeit not in a case directly in point. (See *Gagne* v. *Bertran,* 43 Cal.2d 481 [275 P.2d 15]. Also see *Voss* v. *Friedgen,* 141 Cal.App.2d 135 [296 P.2d 424].)

By way of analogy, attention is directed to section 1710 of the Civil Code reading, in part, as follows: "A deceit, within the meaning of the last section, is either: . . . 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."

█ Title insurance is a contract to indemnify against loss through defects in the title or against liens or encumbrances that may affect the title at the time when the policy is issued. (*King* v. *Stanley,* 32 Cal.2d 584 [197 P.2d 321].) However, there is another factor involved. As pointed out in *King* v. *Stanley, supra,* the purchaser in fact relies on the results of the abstracter's search to decide, then and there, if there is a merchantable title.

█ The Restatement appears to be a proper statement of the rule and *J. H. Trisdale, Inc.* v. *Shasta, supra,* 146 Cal. App.2d 831, a proper application thereof.

█ As indicated above, it is not clear that plaintiffs Hawkins attempted to plead a cause of action based upon negligence in searching the title. The complaint alleges that "in and by the title policy hereinabove referred to defendant represented to plaintiffs . . . that as of the date of said title policy title to their said property was free and clear of all defects, liens and encumbrances shown by the public records except those specifically disclosed in said title policy," that these representations were untrue, made carelessly and recklessly, and were relied upon by plaintiffs.

No such representation appears in the policy attached to the complaint. The policy only purports to insure against certain contingencies, including the existence of certain defects not shown in Schedule B, but there is no express representation that the only defects, liens and encumbrances on the land are those shown in Schedule B. Such a representation cannot be implied from the policy, without assumptions concerning the business practice of title insurers, since it is possible that risks can be insured against which are likely to occur or are certain to occur. Certainly a life insurance policy is not an implied representation that death will not occur.

Perhaps plaintiffs would be entitled to recover had they alleged that defendant undertook to search the title for their benefit, and negligently performed this undertaking or negligently reported the results of the investigation incorrectly. However, there appears to be no such allegation here. The theory pleaded in the complaint is that of a deliberate misrepresentation "in and by the title policy," a theory that is negated by the very terms of the policy.

In the light of the cases cited, *supra,* as to the right to amend, the plaintiffs Hawkins should be permitted to amend their second cause of action if they be so advised.

### Third Cause of Action

In count three of the complaint, plaintiff Bayshore attempts to recover under the policy. Therefore, a prerequisite to recovery under this count is a showing that Bayshore is an "insured" under the terms of the policy.

The first sentence of the policy insures John H. and Landona Hawkins "together with each successor in ownership of any indebtedness secured by any mortgage or deed of trust shown in SCHEDULE B, the owner of which is named as an insured, and any such owner or successor in ownership of any such indebtedness who acquires the land described in SCHEDULE C, or any part thereof, by lawful means in satisfaction of said indebtedness or any part thereof. . . ." No mortgage or deed of trust is shown in Schedule B, so Bayshore cannot qualify under these clauses as an insured. The first sentence also insures "any person or corporation deriving an estate or interest in said land, as an heir or devisee of a named insured, or by reason of the dissolution, merger, or consolidation of a corporate named insured. . . ." The complaint does not allege that Bayshore is an heir or devisee of the Hawkinses. It is apparently claiming to be an insured under

the last clause which is modified by the phrase "of a corporate named insured." The Hawkinses are individuals and not corporations. This clause would not seem to qualify Bayshore as an insured.

The policy by its terms purported to benefit only a restricted class of persons, not including successors situated as Bayshore. Since Bayshore does not come within this class, it would seem that they are not entitled to recover under the policy. Therefore, the third count of the complaint does not and cannot state a cause of action and the demurrer was properly sustained as to Bayshore.

### Fourth Cause of Action

The fourth count is like the second, except that Bayshore Investment Company is named as plaintiff. The infirmity in the alleged representation as to negligence extends to this cause of action.

Even if the representations were expressly made, it does not appear that Bayshore could succeed on this cause of action. Prosser on Torts, page 543 (2d ed.) contains the following discussion: "The problem of the persons to whom the defendant may be liable, already difficult in the case of intentional misrepresentation, becomes still more acute where it is merely negligent. The possible liability which might result from the communication of a statement to remote plaintiffs is so great, and may be so far out of proportion to the fault involved, that there is general agreement that a more restricted rule is necessary in the case of economic loss than where there is tangible harm to person or property; and the difference in the degree of fault may perhaps call for a narrower responsibility for negligent than for intentional misstatement. But the point of limitation has been a subject of considerable discussion. When the representation is made directly to the plaintiff, in the course of his dealings with the defendant, or is shown to him with knowledge that he intends to rely upon it, there has been no difficulty in discovering a duty of reasonable care; and the same duty has been found where it is made to a third person with knowledge that he intends to communicate it to the specific individual plaintiff for the purpose of inducing him to act. At this point most of the courts have drawn the line, holding that mere reasonable anticipation that the statement will be communicated to others, or even knowledge that the recipient intends to make a commercial use of it in dealing with unspecified strangers, is not

sufficient to create a duty of care toward them. Thus attorneys, abstractors of title, inspectors of goods, accountants, surveyors, the operator of a ticker service and a bank dealing with a nondepositor's check all have been held to be under no obligation to third parties.'' No California cases are cited to the examples listed in the last sentence of the paragraph.

However, the general rule is that an abstracter is not liable to subsequent purchasers of the property who have not hired the abstracter, even though it is established that the custom is to show and rely upon prior abstracts in purchase and sale transactions. *Phoenix Title & Trust Co.* v. *Continental Oil Co.*, 43 Ariz. 219 [29 P.2d 1065] ; *Talpey* v. *Wright*, 61 Ark. 275 [32 S.W. 1072, 54 Am.St.Rep. 206] ; *Peterson* v. *Gales*, 191 Wis. 137 [210 N.W. 407, 409, 47 A.L.R. 956] ; *Thomas* v. *Guarantee Title & Trust Co.*, 81 Ohio St. 432 [91 N.E. 183, 26 L.R.A. N.S. 1210] ; *Ohmart* v. *Citizens' Savings & Trust Co.*, 82 Ind.App. 219 [145 N.E. 577] ; *Savings Bank* v. *Ward*, 100 U.S. 195 [25 L.Ed. 621] ; 1 Am.Jur. 168, section 23 ; 1 C.J.S., pages 393-396. There are exceptions to this rule, as where there is a statute imposing liability, where the abstract has been prepared for an undisclosed principal, where there has been a reissuance of the abstract, and where the abstract has been made with the knowledge of the abstracter expressly for the benefit of a third person. See *Phoenix Title & Trust Co.* v. *Continental Oil Co., supra,* 43 Ariz. 219 [29 P.2d 1065], and 1 Corpus Juris Secundum, page 394. There are no allegations in the complaint in this case that would bring plaintiff Bayshore within these exceptions.

The leading case in the scope of the liability of the negligent purveyor of business information is *Ultramares Corporation* v. *Touche*, 255 N.Y. 170 [174 N.E. 441, 74 A.L.R. 1139], holding that a public accountant was not liable to creditors and investors to whom its certificate was exhibited for negligence, but only for fraud or reckless misstatement. In rejecting the contention that defendant was liable for negligent misrepresentations, Justice Cardozo remarked at page 448: ''Liability for negligence as adjudged in this case will extend to many callings other than an auditor's. Lawyers who certify their opinion as to the validity of municipal or corporate bonds, with knowledge that the opinion will be brought to the notice of the public, will become liable to the investors, if they have overlooked a statute or a decision, to the same extent as if the controversy were one between client and adviser. Title

companies insuring titles to a tract of land, with knowledge that at an approaching auction the fact that they have insured will be stated to the bidders, will become liable to purchasers who may wish the benefit of a policy without payment of a premium. These illustrations may seem to be extreme, but they go little, if any, farther than we are invited to go now.''

There is no allegation in the complaint here that would bring the plaintiff Bayshore within a class referred to in Restatement rule, i.e., that defendant intended Bayshore to rely upon the information. On the contrary, the property was not transferred to Bayshore until a little more than 10 years after the Hawkins plaintiffs had acquired it and the title policy had been issued. It is hardly likely under these circumstances that plaintiff could allege that defendant intended to influence any action of Bayshore, or that the title report was prepared expressly for their benefit.

Unless the circle of liability for negligent misrepresentation is to be significantly extended, Bayshore cannot recover here, on any theory considered so far and we so hold.

In the reply brief, plaintiffs contend that a corporation is in a unique relationship to its stockholders and therefore ''should succeed to all rights the individual appellants held in connection with the property.'' This seems to be an argument that the corporate identity should be disregarded for this purpose. A similar argument was made in *Crystal Pier Amusement Co.* v. *Cannan,* 219 Cal. 184, 187 [25 P.2d 839, 91 A.L.R. 1357], where there were fraudulent misrepresentations made to agents of the Amusement Company, a corporation, which were acted upon by them, and later by the same persons as agents of the later-created holding company. The court held it unnecessary and undesirable to consider the application of the doctrine urged by plaintiffs, because liability could be imposed on the simpler ground that the representations were made to the individuals and intended to be acted upon by them regardless of upon whose behalf they acted. The case does not seem applicable here unless the Hawkins plaintiffs acted on behalf of the corporation in exchanging the stock for the property. There is nothing in the complaint that would indicate this, the allegations of the complaint being consistent with the Hawkins plaintiffs becoming stockholders at the time of the transfer of the land to the corporation.

Plaintiffs' argument might also be the simpler one that the corporation, by issuing stock, succeeds to rights of its stock-

holders. No case has been cited which would suggest such a result. The acquisition of the land alone would not give the corporation such rights, as discussed above. Unless the combination of issuing stock and acquiring property takes on a different significance, there would be no basis for extending the defendant's duty of care to them in this case.

To hold that Bayshore may not state a cause of action against the defendant is not to say that Bayshore is remedyless. As pointed out in *Phoenix Title & Trust Co.* v. *Continental Oil Co., supra,* 43 Ariz. 219 [29 P.2d 1065], it has its cause of action against its transferor.

The case is affirmed as to causes of action three and four and reversed as to causes of action one and two, with instructions to permit the plaintiffs Hawkins to amend the first and second causes of action if they be so advised.

Peters, P. J., and Bray, J., concurred.