[No. F005088. Fifth Dist. Oct. 23, 1986.]

DAVID CHRISTIANSEN et al., Plaintiffs and Respondents, v.
WILLIS RODDY et al., Defendants and Appellants.

782

**COUNSEL**

Barker, Clark, Waggoner & Newman, Barker, Waggoner & Newman, H. E. Barker, Jr., Jay R. Miller, Cardozo, Nickerson, Martelli, Curtis & Arata, Ralph S. Curtis and Michael B. Ijams for Defendants and Appellants.

Brian C. Davis for Plaintiffs and Respondents.

**OPINION**

**VARTABEDIAN, J.**\*—Judgment was entered after court trial below finding that appellants Willis Roddy (individually and doing business as Roddy Financial Services) and Eugene H. Files (individually and doing business as E. H. Files and Associates) negligently misrepresented the value of certain property securing a loan purchased by respondents David Christiansen, Frank and Sophie Mayer, and Sam and Betty Satariano. The statement of decision and judgment awarding damages were filed on November 7, 1984. The above named appellants filed notices of appeal on December 21, 1984, and January 3, 1985, respectively.

## THE FACTS

Between 1977 and March of 1982, appellant Roddy was employed full time at Sierra Mortgage Company (Sierra) as an investment counselor. His primary function was to find investors to "buy into" loans requested by potential borrowers. Sierra would then function as a broker for the loan, bringing the borrowers and investors together and taking a commission paid by the borrower.

In 1981, Bobby Campbell contacted Sierra to arrange for a loan, and brought a completed loan application to Roddy. His intention was to borrow using real property as collateral. Roddy or someone else at Sierra then contacted appellant Eugene Files, a real estate appraiser, to value the real property which Campbell had proposed as collateral.

Files visited Campbell's property, a meat packing plant. Campbell showed Files around the property, and gave him a copy of an earlier appraisal. The previous appraisal done about a year earlier gave a value of $165,000. It listed the lot size as 50 feet by 100 feet, but an attached scale drawing of the plant clearly showed the facility, with its attached loading dock, to be

---

\*Assigned by the Chairperson of the Judicial Council.

greater than 50 feet wide. Files verified the measurements in the earlier appraisal, but did not notice the apparent encroachment of the plant's structure onto adjoining property.

Files appraised the property at $230,000. It included not only the realty and structure, but at least some personalty, including a freezer trailer to which Files fixed a replacement value, suggested by Campbell, of $17,500. Although he felt that the structure was already more than one-third of its way into a total 70-year serviceable lifetime, he only depreciated its estimated value of $183,886 by $5,000, or less than 3 percent. Files also used only one method of appraisal, although he testified that it is prudent to use more than one when possible.

Files submitted his appraisal to Campbell and not to Roddy or Sierra. Roddy did, however, obtain a copy of the appraisal. As part of his job as investment counselor and salesman, he prepared a draft "loan brochure." Such brochures ultimately were circulated in their final form to all of Sierra's investment counselors, who would use them to find investors to finance loans. The draft brochure prepared by Roddy for the packing plant indicated that the Campbells sought a $100,000 loan. Roddy listed the estimated market value of the property as $230,000, the figure in Files's appraisal; the property was already securing a first deed of trust for $44,922, and thus had an estimated equity of $185,078 remaining.

Prospective loans for sale had to be approved by Mrs. Cowdrey, Sierra's president. The Campbell application, along with the draft brochure and Files's appraisal, was reviewed and approved for $60,000, and a final brochure was prepared and circulated.

Respondent Sam Satariano was another investment counselor working for Sierra. He had held a real estate broker's license since 1972. He first heard about the Campbell loan when the loan brochure came across his desk. He had previously made other investments through Sierra, but did not have enough money at the time to make the $60,000 investment.

Sometime thereafter Satariano called on respondent Frank Mayer. Satariano showed Mayer a half dozen loan brochures, of which the Campbell brochure showed the best protection for the loan in terms of equity. Mayer agreed to invest $30,000. Satariano was willing to put in $15,000, and recruited respondent David Christiansen, another past Sierra investor, to put up the final $15,000.

On October 19, 1981, Campbell and his wife executed a second deed of trust on the property securing the 36-month promissory note. Respondents,

the payees, were named beneficiaries. Campbell ceased paying on the loan several months later (approximately three months of interest payments having been made). Foreclosure proceedings were commenced, but terminated when Campbell deeded the property to respondents in lieu of foreclosure on July 23, 1982. The property was still subject to the first deed of trust. The property was then leased back to Campbell, but he made no lease payments, and in October 1982 the respondents put the property up for sale. Although the property was listed at only $130,000, they received no offers. Respondents then hired Jud Smith to reappraise the property. Smith discovered that the physical plant encroached on the adjacent property, and, based on two different valuation methods, appraised the property at $51,000.

## DAMAGES AWARDED

Respondents below claimed the loss of their investment and anticipated interest, plus various other expenses. The trial court awarded them $86,500 plus costs. This award was based upon the court's finding the equity in the subject property to be $6,500 (fair market value of $55,000 minus first trust deed obligation of $48,500). This sum was then subtracted from the amount invested ($60,000) to render compensatory damages in the sum of $53,500. The remaining $33,000 was awarded for 33 months of "lost interest" (at the note rate of 20 percent per annum).

## DISCUSSION

I. *Liability of appraiser Files.*

The trial court found that Files negligently misrepresented the value of the packing plant.

■ "The elements of a cause of action for negligent misrepresentation are:

"'1. The defendant must have made a representation as to a past or existing material fact;

"'2. The representation must have been untrue;

"'3. Regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true;

"'4. The representation must have been made with the intent to induce plaintiff to rely upon it;

"'5. The plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation;

"'6. And, finally, as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage.' (BAJI No. 12.45; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 573, pp. 2210-2211; § 587, p. 2225.)" (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 17 [147 Cal.Rptr. 655], overruled on another point in *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 507 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763].)

The fourth requirement above, intent to induce plaintiff's reliance, is challenged here by appellant Files. As primary authority he cites *Hawkins* v. *Oakland Title Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116 [331 P.2d 742], in which the court discussed the question of how far liability should extend for a negligent misrepresentation, quoting Prosser, Torts (2d ed. 1955) at page 543: "'The problem of the persons to whom the defendant may be liable, already difficult in the case of intentional misrepresentation, becomes still more acute where it is merely negligent. The possible liability which might result from the communication of a statement to remote plaintiffs is so great, and may be so far out of proportion to the fault involved, that there is general agreement that a more restricted rule is necessary in the case of economic loss than where there is tangible harm to person or property; and the difference in the degree of fault may perhaps call for a narrower responsibility for negligent than for intentional misstatement. But the point of limitation has been a subject of considerable discussion. When the representation is made directly to the plaintiff, in the course of his dealings with the defendant, or is shown to him with knowledge that he intends to rely upon it, there has been no difficulty in discovering a duty of reasonable care; and the same duty has been found where it is made to a third person with knowledge that he intends to communicate it to the specific individual plaintiff for the purpose of inducing him to act. At this point most of the courts have drawn the line, holding that mere reasonable anticipation that the statement will be communicated to others, or even knowledge that the recipient intends to make a commercial use of it in dealing with unspecified strangers, is not sufficient to create a duty of care toward them. Thus attorneys, abstractors of title, inspectors of goods, accountants, surveyors, the operator of a ticker service and a bank dealing with a nondepositor's check all have been held to be under no obligation to third parties.'" (*Hawkins, supra,* 165 Cal.App.2d at pp. 128-129.)

The most recent edition of Prosser's treatise notes that in a narrow circumstance involving abstractors and surveyors, the Michigan State Supreme

Court expressed a rule of liability based on the foreseeability of harm.[1] (Prosser & Keeton, Torts (5th ed. 1984) § 107, p. 747.) This, however, is an aberrant viewpoint. Prosser is emphatic that foreseeability of harm is not the test: "The plaintiff must have been a person for whose use the representation was intended, and it is not enough that the defendant ought reasonably to have foreseen reliance by someone such as the plaintiff." (*Ibid.*)

California cases clearly follow the just expressed overwhelming majority view, even for surveyors and abstractors. (See *Walters* v. *Marler, supra,* 83 Cal.App.3d at p. 19; *Stagen* v. *Stewart-West Coast Title Co.* (1983) 149 Cal.App.3d 114, 121-122 [196 Cal.Rptr. 732].)

Respondents cite three cases on this issue, each for the proposition that where it is reasonably foreseeable that a person or class of persons would communicate the representations to another, foreseeability of harm extends toward those people who reasonably rely on the information. Each is inapposite. *Andrew* v. *Bankers & Shippers Ins. Co.* (1929) 101 Cal.App. 566 [281 P. 1091] involved a direct misrepresentation to the plaintiff; there was no question of the extension of liability to third persons. *Lewis* v. *McClure* (1932) 127 Cal.App. 439 [16 P.2d 166] and *Wice* v. *Schilling* (1954) 124 Cal.App.2d 735 [269 P.2d 231] are each cases sounding in intentional fraud, not in negligent misrepresentation. Similarly, reliance on Witkin's commentary is misplaced. The citation of Witkin, Summary of California Law (8th ed. 1974) pages 2729-2730, involves a discussion of intentional misrepresentation. In his treatment of negligent misrepresentation, Witkin specifically observes that "the class of persons entitled to rely upon the representations is restricted to those to whom or for whom the misrepresentations were made. Even though the defendant should have anticipated that the misinformation might reach others, he is not liable to them." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 480, p. 2740.) Respondents invite us to broaden this narrow scope of liability under existing California law. We respectfully decline the invitation.

Here Files performed appraisal services for Campbell and for Sierra, not for the respondents. There is no evidence that Files knew the respondents. Likewise, there is no indication that he knew of any of them considering or actually loaning money secured by the subject property until he was served in this action. Files could not have intended that respondents rely on his appraisal, and therefore, as a matter of law, he could not have been liable to them.

---

[1] *Williams* v. *Polgar* (1974) 391 Mich. 6 [215 N.W.2d 149].

## II. *Liability of investment counselor Roddy.*

Appellant Roddy was also found to have negligently represented the value of the property to respondents. He contends that he could not have reasonably foreseen injury to respondents. He further asserts that, as a mere conduit of information, any connection between his conduct and respondents' injuries is remote. With regard to respondent Satariano, he additionally claims there was no justifiable reliance.

The six elements of negligent misrepresentation are expressed hereinbefore. (*Walters* v. *Marler, supra,* 83 Cal.App.3d at p. 17.) Of these six elements, the first, second, fourth and sixth are indisputably met in Roddy's case. Roddy did make a representation of a material fact, the value of the packing plant, in the loan brochure. That representation was proven at trial to have been incorrect. The representation was made in a form (the loan brochure) specifically intended to induce reliance among Sierra's investors. And, as a result of this reliance on the misrepresentation, the respondents sustained damage. The remaining elements, (a) representation without reasonable belief and (b) justifiable reliance by plaintiff, need to be analyzed.

■ *"Regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true."* The trial court specifically found that Roddy had no reasonable ground for believing the valuation to be accurate. Although in possession of Files's appraisal (which patently included the trailer in its $230,000 final figure) at the time he drafted the loan brochure, Roddy did not review the appraisal, but merely "glanced at it one time." He failed to notice the trailer, which he conceded at trial should not have been included in the total.

Appellant Roddy's reliance on *Graham* v. *Ellmore* (1933) 135 Cal.App. 129 [26 P.2d 696] is ill-founded. *Graham* involved "an implied finding that the salesman had reasonable grounds for believing the statement made to be true." (*Id.* at p. 132.) Here, there is no such implied finding; instead we have an express finding to the contrary. Additionally, as the *Graham* court observed, "Whether such statement was warranted by [the defendant's] information and whether he had reasonable grounds for believing the same to be true, depend upon all the circumstances of the particular case and are questions, primarily, for the trial court." (*Id.* at pp. 132-133.) In the instant case, the trial court determined that Roddy had no reasonable basis for thinking the $230,000 figure reliable when he placed it in the loan brochure.

■ *"The plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation."* Ap-

pellant Roddy argues that Satariano could not have justifiably relied on Roddy's representation because Satariano had access to the files involved and as a professional could have checked out the property himself. Roddy appears to suggest that since he and respondent Sam Satariano were co-workers in comparable professional positions, Satariano should essentially ignore his investment counseling work product or at most look upon Roddy's representations dubiously.

Superior knowledge can be a situational determination. For example, two attorneys of equal skill, experience, and intelligence will not necessarily have equivalent knowledge of a particular case if one has worked many hours preparing the matter while the other knows nothing about it. Here, if Satariano had reason to believe Roddy to be skillful and knowledgeable regarding this particular investment, his confidence in his fellow worker would seem natural. Satariano apparently could have examined Files's appraisal himself rather than rely on Roddy's loan brochure. However, the fact that Satariano could have gotten the information himself should not reflect on his decision to rely on the skills of another licensed broker and fellow salesman in assessing the appraisal. (See *Chamberlain* v. *Wakefield* (1949) 95 Cal.App.2d 280, 288 [213 P.2d 62].)

The trial court's factual determinations should not be disturbed on appeal, and the same support the judgment against Roddy.

III. *Lost interest as damages.*

In assessing damages, the trial court included respondents' $60,000 investment, reduced by $6,500 in equity, and also added lost interest "at the rate of 20% per annum for at least thirty-three (33) months, amounting to at least $33,000.00; . . ." Both appellants claim that this award of prospective profits was error.

■ Although the failure to move for a new trial ordinarily precludes a party from complaining on appeal that the damages awarded were either excessive or inadequate (*Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 918-919 [114 Cal.Rptr. 622, 523 P.2d 662]), this failure "does not preclude a party from urging legal errors in the trial of the damage issue such as erroneous rulings on admissibility of evidence, errors in jury instructions, or *failure to apply the proper legal measure of damages.*" (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 122 [135 Cal.Rptr. 802], italics added.) Thus, although Files and Roddy failed to move for a new trial in the superior court, this court is not precluded from considering arguments that the trial court employed an incorrect measure of damages.

■   The proper measure of tort damages is the "out-of-pocket" measure; successful tort plaintiffs are not entitled to have damages computed on a contract, or "benefit-of-the-bargain," theory. (Civ. Code, §§ 3333, 3343; *Overgaard* v. *Johnson* (1977) 68 Cal.App.3d 821, 823 et seq. [137 Cal.Rptr. 412].)

"A plaintiff in a tort action is not, in being awarded damages, to be placed in a better position than he would have been had the wrong not been done." (*Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 821-822 [278 P.2d 91].) Here, "had the wrong not been done," i.e., had the misrepresentation not been made, respondents would presumably not have made their investments; while it would have been proper to award them their $60,000 (less equity) and interest at the legal rate, it was improper for the court below to put respondents in a better position than they would have been had they not been deceived (and therefore not invested their money at 20 percent interest). To carry the matter one step further, there was no evidence nor can it be presumed that the respondents would have received with sufficient certainty a 20 percent annual return for some other $60,000 investment for three years.

Cases cited by respondents supporting the award of lost anticipated profits in tort cases deal with injuries to established enterprises, not to new investments. *Lucky Auto Supply* v. *Turner* (1966) 244 Cal.App.2d 872, at page 882 [53 Cal.Rptr. 628] states: "'It is well established in California, moreover, that such damages may include loss of anticipated profits where an established business has been injured.'" The underpinning of this rule is the necessity of ascertainment of such loss with "reasonable certainty." (*Ibid.*)

In the instant case, even if the property used as security was worth its represented value, there still was no guarantee whatsoever of getting a 20 percent annual return for the entire 36-month loan term. The value of the security certainly did not insure the obligor's ability to make payments pursuant to the note. Had the matter gone to foreclosure sale, respondents would have only received back their principal plus amount of interest payments and delinquency charges in default at that time along with costs. Considering a different scenario, the underlying promissory note (received into evidence by the trial court in plaintiffs' exhibit 4 and made a part of the record on appeal) had a provision for acceleration of the payment of the full principal (otherwise payable at the end of the loan term) plus accrued interest in the event of sale of the property. The note also allowed prepayment of the loan (including a penalty under certain conditions) which would have left respondents with somewhat less than their anticipated profits.

Therefore, the trial court erred in awarding $33,000 in interest. Instead, the award of interest at the legal rate, consistent with the provisions of Civil Code section 3287 would be appropriate.

The judgment against appellant Files is ordered reversed. The award of lost interest is reversed, and said matter is remanded to the trial court for reconsideration of damages consistent with the discussion of interest herein. In all other respects, the judgment is affirmed. The appellants are ordered their costs on appeal.

Woolpert, Acting P. J., and Martin, J., concurred.

Petitions for rehearing were denied on November 14, 1986, and the following opinion was then rendered:

**VARTABEDIAN, J.**\*—On October 30 and November 4, 1986, respondents and appellant Roddy filed petitions for rehearing. The requests challenge this court's determination that appellant Files, an appraiser, was not liable to respondents for negligent misrepresentation. In support thereof, petitioners for the first time cite *International Mortgage Co. v. John P. Butler Accountancy Corp.* (1986) 177 Cal.App.3d 806 [223 Cal.Rptr. 218] and *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901]. Each is readily distinguishable from the instant case.

*International* essentially held that the certified public report of an independent auditor is necessarily intended for public consideration and reliance. (177 Cal.App.3d at pp. 817-820.) Additionally, *International* involved the physical delivery of the actual audited financial statements to the plaintiff. Plaintiff presumably relied not only on the representations but also on the qualifications of the auditor-accountant.

The *Roberts* court found that an attorney may be liable for negligence to a specific person intended to benefit by his performance. (57 Cal.App.3d at pp. 110-111.)

In the instant case, Files's appraised value of $230,000 was placed on the sales brochure with no mention of Files, and no mention that the figure was arrived at by an assertedly qualified real estate appraiser. Not only did Files not know of the investors, but the investors likewise knew nothing of Files. While they relied on the appraised value which Files

\*Assigned by the Chairperson of the Judicial Council.

negligently provided to Sierra and Roddy, the investors did not rely on it as being Files's work product. On the other hand, regardless of where the investors thought that the $230,000 figure came from, they could reasonably have presumed that Sierra (and Roddy, the preparer of the loan brochure) had taken some steps to verify the figure. The investors' reliance would have been on Sierra and implicitly on Roddy, but not on an appraiser whose contribution to the loan brochure was unknown to them.

Woolpert, Acting P. J., and Martin, J., concurred.

Petitions for a rehearing were denied November 14, 1986.